IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SEBRINA L. THOMPSON,              )
                                  )
            Plaintiff,            )
                                  )
    v.                            )        CIVIL ACTION NO. 2:04cv484-SRW
                                  )
JO ANNE B. BARNHART, Commissioner )
of Social Security,               )
                                  )
            Defendant.            )

## MEMORANDUM OF OPINION

Sebrina L. Thompson brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income and disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

## BACKGROUND

On July 13, 2000, plaintiff filed an application for disability insurance benefits and Supplemental Security Income. On May 7, 2002, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on August 2, 2002, in which he found that plaintiff was not disabled within the meaning of the Social Security Act. On March 20, 2004, the Appeals Council denied

plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that the ALJ erred by giving the opinions of non-examining physicians more weight than those of plaintiff's treating physicians. Specifically, plaintiff contends that the ALJ erred in rejecting the opinion of her treating physicians that she suffers from long-term chronic paranoid

2

schizophrenia and depression.

It is well-settled that the opinion of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). The Social Security Administration has explained the reasoning behind this rule: "Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2); see also Lewis, 125 F.3d at 1440. Thus, "the ALJ 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" Nyberg v. Commissioner of Social Security, 2006 WL 1168815, *1 (11th Cir. 2006) (unpublished) (citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Phillips, 357 F.3d at 1241 ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

In this case, the court agrees with plaintiff that the ALJ erred in failing to give plaintiff's treating physicians' opinions proper weight with regard to her diagnosis of paranoid schizophrenia.

1. Severity of Impairment

The ALJ's error is evident at several stages of the five-step sequential evaluation

process. 20 C.F.R. § 404.1520. First, at step two of that process, the ALJ found that plaintiff had only two severe impairments – malingering and depression – in addition to the non-severe impairments of mild obesity, back pain and history of alcohol abuse and hydrocodone abuse. R. 21. The ALJ did not include paranoid schizophrenia on this list. This is true despite the fact that the ALJ's decision acknowledged: (1) plaintiff's testimony that she had ongoing mental problems, including hearing voices, R. 18; (2) plaintiff's diagnosis by treating physicians at Carraway Methodist Medical Center with "chronic schizophrenia, paranoid type, with acute exacerbation, depressive disorder NOS, alcohol dependence and hydrocodone dependence," R. 19; and (3) plaintiff's diagnosis by treating physicians at South Central Alabama Mental Health with "schizophrenia, paranoid type, episodic with interepisode residual symptoms." R. 20.

In his step two analysis, the ALJ did not explicitly state his reasons for declining to credit the diagnoses of plaintiff's treating physicians and failing to find that plaintiff's paranoid schizophrenia was a severe impairment. See R. 18-21. At most, the ALJ noted, without further analysis, that a one-time consultative psychiatric evaluation conducted by Dr. Charles H. Smith indicated "blatant malingering" by plaintiff and, further, that plaintiff did not "confirm or present with any features which would be indicative of panic disorder, depression or paranoid schizophrenia" on the date of the consultative exam, and "her historical problems with paranoid schizophrenia, depression, alcohol dependence and hydrocodone dependence were felt to be in remission or properly controlled with medications prescribed for the claimant." R. 20-21. The ALJ also referred to testimony by a non-

4

examining psychiatrist, Dr. Clemmie Palmer, who relied on the Smith evaluation to determine that plaintiff did not meet or equal a listing, and commented that "there is evidence of malingering and her use of drugs cloud the issue regarding schizophrenia and preclude the diagnosis of such."  R. 19.  However, the ALJ did not analyze the specific effect of Smith's consultative evaluation and Palmer's testimony on his decision at stage two.

The ALJ clearly erred in failing to credit the views of plaintiff's treating physicians and failing to determine that plaintiff's paranoid schizophrenia was a severe impairment. "Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); see also Williams v. Barnhart, 186 F.Supp.2d 1192, 1197 (M.D. Ala. 2002)(same).  In this case, plaintiff's treating physicians unequivocally found that she suffered from a mental impairment – that is, paranoid schizophrenia – which appears to have, based on the evidence presented to this court, a more than minimal effect on her ability to function.

Plaintiff's treatment began in January 1998 when she presented at the South Central Alabama Mental Health Center with complaints of depression, paranoia, and an inability to cope with a variety of problems.  R. 247.  She admitted to a history of alcohol use.  Id. Plaintiff was diagnosed with dysthymic disorder, early onset, on January 23, 1998.  R. 248.

After sporadic treatment, plaintiff received a March 12, 1998 diagnosis of dysthymic disorder, early onset, and alcohol abuse, with a GAF of 68 from Dr. Donato Roman, a South Central Alabama Mental Health psychiatrist. R. 244. Her record reflects a leave of absence from work at that time due to depression and other problems. Id.

In April, 2000, plaintiff returned to the center with complaints of an inability to cope and paranoia – specifically, plaintiff reported, *inter alia*, that she was afraid that someone would come in, she slept in her work clothes a lot, she could not use a dirty bathroom, and she thought that other people were talking about her. She also complained of hearing voices. R. 241. Plaintiff's mother indicated that plaintiff thought that others were out to get her, and that she did not trust people, could not keep friends, and could not keep a job. R. 242. Plaintiff was diagnosed with mood disorder not otherwise specified. R. 229. On April 20, 2000, a clinical analysis by Robert Powell, M.S. LPC, reported that plaintiff suffered from paranoid symptoms, depressive symptoms, insomnia, mental confusion, and coping difficulties. Powell noted that "[c]lient appears to have some legitimate mental illness symptoms." R. 237.

Plaintiff was admitted on June 15, 2000 as an inpatient at Carraway Methodist Medical Center in Birmingham, Alabama. R. 167. She was initially admitted to the chemical dependency unit for evaluation and treatment of alcohol and hydrocodone dependencies. Id. However, plaintiff's behavior upon admission at Carraway was "bizarre," showing signs of paranoia, irritability and auditory hallucinations. Id. at 168-9. Doctors believed plaintiff to be "acutely psychotic," and she was transferred to the locked psychiatric

6

unit where she remained until June 26, 2000.  Early in plaintiff's course of treatment at Carraway, on June 16, 2000, Dr. Jerry Howell, plaintiff's attending physician, made a provisional diagnosis of paranoid schizophrenia, major depression by history, alcohol dependence, and hydrocodone dependence, with a GAF of 30 at the time of admission.  R. 172.  He commented that "[t]he best that the patient has done this year is probably around 55-60."  Id.  Dr. Howell noted that "[a]t the time of this evaluation this psychiatrist feels that the patient most likely has schizophrenia but she could have a drug induced psychosis.  We will treat her acute psychotic symptoms and detox the patient off her hydrocodone and alcohol."  Id.

Ten days later, after close observation and an intensive course of treatment with multiple medications including anti-psychotic drugs, plaintiff's auditory hallucinations had resolved and her other symptoms had improved.  R. 168-9.  Dr. Howell reported that, "[i]n regards to her psychotic symptoms, this psychiatrist strongly feels that the patient does have paranoid schizophrenia and she has been treated for her psychotic symptoms with improvement."  R. 169.  His "final diagnosis" was chronic schizophrenia, paranoid type, with acute exacerbation; depressive disorder NOS; alcohol dependence; and hydrocodone dependence.[1]  R. 167.

Plaintiff returned to South Alabama Mental Health on June 22, 2001, with evidence of dysphoric mood, "some" paranoid symptoms and auditory hallucinations.  R. 279.  Her

---

[1]  Dr. Howell noted that plaintiff reported that she had been trying to treat her auditory hallucinations with Lortab.  R. 168.

GAF was noted as 60 on June 22, 2001, and 55 on June 28, 2001.  R. 231, 286.  Dr. Sharon Brown approved a diagnosis of "Schizophrenia, Paranoid Type, Episodic with Interepisode Residual Symptoms" and a history of alcohol abuse and sedative dependence on July 17, 2001.  R. 286.  Thereafter, plaintiff's treatment plan was continued and updated on several occasions in 2001.  R. 288.

On December 19, 2001, plaintiff returned to South Alabama Mental Health for assessment.  Her mood and affect were reported as stable, but she continued to have episodic auditory hallucinations.  R. 289.  Her diagnosis of schizophrenia, paranoid type, episodic with interepisode residual symptoms, was unchanged.  Id.  On the same date, Dr. Faraz Masoud, a treating psychiatrist, filled out a medical source statement concerning plaintiff's condition.[2]  Dr. Masoud noted that plaintiff suffered from moderately severe limitations in her ability to respond to customary work pressures and to behave in an emotionally stable manner; moderate limitations in her ability to relate to people, to understand, carry out and remember instructions, to respond appropriately to changes in the work setting, to use good judgment, and to perform complex, repetitive or varied tasks; and mild restriction of her daily

_____

[2]  This medical source statement is not contained in the record.  Plaintiff's Memorandum of Law in Support of Plaintiff's Argument represents that the statement, which is attached to the Memorandum of Law as Exhibit A, was "included in Exhibit 8F as provided to counsel for the preparation of the Appeals Council brief," although it does not appear in the official transcript of record.  Id. at 6 n. 3.  Defendant's Memorandum in Support of the Commissioner's Decision does not object to plaintiff's representation concerning the medical source statement or otherwise discuss it.  "The Secretary has the burden of compiling and filing a transcript of the record including the evidence upon which the findings and decision complained of are based."  Barnes v. Barnhart, 251 F.Supp.2d 973, 974 (D. Maine 2003).  Absent any objection by defendant, the court must assume that plaintiff is correct that Dr. Masoud's medical source statement is properly before the court.

activities, mild deterioration in her personal habits, mild impairment of her ability to maintain

concentration and attention for extended periods, mild impairment of her ability to perform

activities within a schedule, maintain regular attendance, and be punctual, and mild

limitations in her ability to respond appropriately to supervision, respond appropriately to co-

workers, and perform simple tasks.[3]  Plaintiff's Memorandum of Law, Exhibit A at 1.  Dr.

Masoud indicated that plaintiff had experienced the same level of severity of impairment

since January 1998.  Id. at 2.  He described plaintiff as having a "recurring psychiatric

illness" and a "longstanding [history of] affective and perceptual disturbance," and indicated

that her condition was likely to deteriorate if she were placed under stress, especially that of

a job.  Id.

      Thus, as noted above, the ALJ erred in failing to find at stage two of his analysis that

plaintiff suffered from the severe impairment of paranoid schizophrenia, and particularly

erred in doing so without any explicit discussion of his reasoning at this stage.  Further, to

the extent that the ALJ discounted the opinions of plaintiff's treating physicians and credited

those of non-treating physicians – that is, a one-time consultative examiner and a non-

---

[3] The medical source statement defines a "mild" impairment as a "suspected impairment of a slight importance which does not affect ability to function"; a "moderate" impairment as "an impairment which affects but does not preclude ability to function"; and a "moderately severe" impairment as "an impairment which seriously affects ability to function."  Id. at 2.  Based on this definition, a "moderately severe" impairment appears to be equivalent to what is often referred to as a "marked" impairment.  See Wind v. Barnhart, 133 Fed.Appx. 684, 687 n. 2 (11th Cir. 2005) (A "'marked' restriction is 'an impairment which seriously affects ability to function.'"); see also Miles v. Chater, 84 F.3d 1397, 1399 n. 3 (11th Cir. 1996)("The questionnaire defined 'marked' as '[a]n impairment which seriously affects ability to function.'"); King v. Barnhart, 320 F.Supp.2d 1227, 1232 n. 15 (N.D. Alabama 2004) (same).

examining medical expert – in arriving at his decision not to consider plaintiff's paranoid schizophrenia to be a severe impairment, he failed to give the former the weight to which they were entitled in his stage two discussion.

The first of these non-treating physicians is Dr. Charles Smith, who examined plaintiff only once, on December 3, 2000.[4]   Plaintiff appears to have been almost entirely unresponsive to Dr. Smith's questions on this occasion, answering most of them either incorrectly or not at all.  Dr. Smith wrote, "Presentation today consisted of no eye contact and very slow responses.  She basically responded 'Don't know' or 'I can't remember' to all questions.  It appeared to me that she was presenting with Blatant Malingering.  The claimant did not confirm or present with any features which would be indicative of Panic Disorder, Depression, or Paranoid Schizophrenia."  R. 252.  As a result, Dr. Smith concluded that plaintiff's "historical problems with Paranoid Schizophrenia, Depression, Alcohol Dependence, and Hydocodone Dependence are either in remission or properly controlled with medications prescribed for this claimant."  R. 254.

The second non-treating physician, Dr. Clemmie Palmer, never examined the plaintiff at all.  In his testimony at the administrative hearing, Dr. Palmer relied on Dr. Smith's diagnosis of malingering to determine that plaintiff did not meet a listing.  He acknowledged that plaintiff "was also diagnosed ... with a schizophrenic illness, but she was [sic] reportedly

---

[4]  Dr. Brantley, the director of Baldwin/Escambia Assessment, Consulting & Habilitation, signed the disability evaluation along with Dr. Smith.  R. 51.  However, the evaluation itself appears to have been conducted by only one examiner.  See, e.g., R. 251 ("She told *me* ..."); R. 252 ("*I* asked her ..."); R. 254 ("*I* would like to thank ...") (emphasis added).

had some residual symptoms mainly and [they] thought she was pretty stable, if she truly has schizophrenia."  R. 48.  Later in his testimony, Dr. Palmer admitted that he had not seen plaintiff's diagnosis from Carraway prior to testifying, see R. 51-52, and he acknowledged that it was possible that the Carraway and South Alabama Mental Health diagnoses of paranoid schizophrenia were correct.  R. 54.[5]  He also agreed that it was possible that plaintiff had not taken her medication at the time that she saw Dr. Smith and therefore was having severe thought process difficulties at that time.[6]  R. 53-54.

Dr. Palmer further testified that alcohol and drug use "cloud the picture" and "preclude the diagnosis of schizophrenia in my opinion."  R. 50, 58.  However, Dr. Jerry Howell, plaintiff's attending physician at Carraway, specifically entertained the possibility that plaintiff might have a drug-induced psychosis, but concluded after intensive treatment that "[i]n regards to her psychotic symptoms, this psychiatrist strongly feels that the patient does have paranoid schizophrenia."  R. 169.  He gave plaintiff a "final diagnosis" of chronic schizophrenia, paranoid type, with acute exacerbation. R. 167.  In addition, Dr. Sharon Brown diagnosed plaintiff with "Schizophrenia, Paranoid Type, Episodic with Interepisode Residual Symptoms" on July 17, 2001, long after Dr. Smith determined that her historical

---

[5]  Dr. Palmer testified that these diagnoses could be incorrect, as well.  Id.  "... I'm not sure," he said.  Id.

[6]  On February 2, 2001, a case reviewer for the Social Security Administration, Dr. A. McAlister, also wrote in a medical summary that "[c]laimant appeared to be malingering on the Psych CE 12/3/00 but symptoms and mannerisms are not inconsistent with presentation on 6/5/00 hospitalization.  Also, the Psych CE examiner stated that claimant reported current meds but had no prescription bottles." R. 272.

problems with substance abuse were "either in remission or properly controlled with medications...." R. 254, 286.

Thus, the ALJ did not reject the opinions of the plaintiff's treating physicians based on sufficient cause, if he did indeed discount those opinions at stage two of his analysis based on the views of Dr. Smith and Dr. Palmer.

2.    Meeting or equaling a listing

Even though the ALJ apparently determined, without specifically discussing his reasons, that plaintiff's paranoid schizophrenia was not a severe impairment, he went on to find at the third step of the analysis that plaintiff did not meet listing 12.03 (affective orders) or 12.04 (schizophrenic, paranoid and other psychotic disorders). His analysis consisted of the following:

> The claimant's attorney argues that the claimant met the criteria for Medical Listing 12.03 and 12.04. However, no treating or examining source or medical expert has so concluded. In fact, during her examination in December of 2000, she was found to not even meet the criteria for schizophrenia, as she did not confirm or report any symptomology of such. Dr. Palmer also testified that the claimant does not meet or equal any listing. In addition, I have examined the record and I find that the evidence does not support such a conclusion. Thus, I find that the claimant's severe and not severe impairments, considered singularly and in combination, are not of listing-level severity.

R 22. Again, for the reasons noted above, the court concludes that the ALJ's analysis at this stage gave insufficient weight to the findings of plaintiff's treating physicians both before and after Dr. Smith's one-time examination in December, 2000, that plaintiff suffered from paranoid schizophrenia. Further, the ALJ failed to consider whether or not plaintiff met or equaled the requirements of Listing 12.03 in sufficient detail to give the court confidence in

12

his findings.

> There are two ways to meet Listing 12.03. "First, the claimant can show the existence of certain symptoms associated with schizophrenia (the paragraph 'A' criteria), plus the existence of two of more functional impairments at a stated level of severity (the paragraph 'B' criteria).... Alternatively, the claimant can prevail by satisfying the paragraph 'C' criteria. This entails showing that [the claimant] ... at one time in the past satisfied the criteria of paragraphs 'A' and 'B,' that her symptoms are currently attenuated by treatment, and that she has either a history of repeated episodes of deterioration or a recent, prolonged period of inability to function." Pagan v. Bowen, 862 F.2d 340, 343 (D.C.Cir.1988). The paragraph "C" criteria were added to the Listing "to ensure that the chronic schizophrenic individual who may have his or her symptoms attenuated by treatment but who still cannot work because of more subtle manifestations of his or her disorder will now meet the severity of the revised listing." Poulin v. Bowen, 817 F.2d 865, 875 (D.C.Cir.1987).

Williams v. Apfel, 73 F.Supp.2d 1325, 1339 (M.D. Fla. 1999). "In contrast to paragraph 'B.4.,' paragraph 'C.1.' does not require that the episodes of deterioration or decompensation take place in work or work-like settings." Id. at 1339. "There is also no requirement that these episodes last a specific period of time." Id. at 1339-40. Further, "the episodes of deterioration or decompensation need not be severe to meet the requirements of Listing 12.03(C). Rather, paragraph 'C' 'expressly recognize [s] that the threat of future episodes, coupled with the presence of mild symptoms between episodes, imposes a continuing 'functional restriction' on an individual.'" Id. at 1340. In this case, the ALJ should have specifically analyzed whether or not plaintiff met the requirements of the applicable version of Listing 12.03 under both parts of that listing, including an appropriate discussion of Dr. Masoud's findings.

3.    Residual functional capacity

The ALJ evaluated plaintiff's residual functional capacity at the fourth step of the analysis.  In doing so, he gave

> substantial weight to the opinions of Drs. Palmer, Brantley and Smith regarding the claimant's functional abilities. Their opinions are well supported by clinical examinations and tests of record, and are generally consistent with the record as a whole. In addition, they are all psychiatrists. Great weight is given to the records submitted from South Central Alabama Mental Health and Carraway Hospital.  However, those records did not provide specific details as to how alcohol abuse and sedative dependence affected the diagnosis of schizophrenia.

R. 22.  For the remainder of his discussion of plaintiff's functional abilities, the ALJ relied on the Smith report, and Dr. Palmer's testimony based on that report, to determine that plaintiff's allegations of disability were "less than credible," that she "was deemed incapable of substantiating criteria which would meet paranoid schizophrenia and found to be in remission," that her problems with depression were also in remission, and that she retained the residual functional capacity to perform age appropriate, simple, unskilled, repetitive, routine and low stress work at the medium level of exertion with certain other limitations. R. 22-23.

Again, the ALJ's analysis at this stage of his evaluation failed to give proper weight to the opinions of plaintiff's treating physicians.  Although the ALJ purported to accord "great weight" to the views of these physicians in theory, he did not do so in fact.  His discussion ignored the fact that Dr. Howell and Dr. Brown diagnosed plaintiff as suffering from paranoid schizophrenia – both in addition to and subsequent to her historical problems with substance abuse – and that Dr. Masoud (and other treating staff) found that plaintiff

14

continued to have significant limitations from a "recurring psychiatric illness," a condition which Dr. Masoud described as likely to deteriorate if she were placed under stress, especially that of a job.

**CONCLUSION**

Upon review of the record as a whole, the court concludes that this action should be reversed and remanded to the Social Security Administration for further administrative proceedings not inconsistent with this opinion, to include, at a minimum, a proper evaluation of the opinions and conclusions of plaintiff's treating physicians.  A separate judgment will be entered pursuant to sentence four of 42 U.S.C. § 405(g).

DONE, this 1st day of June, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE